CHARLES HEBERT *vs.* GEORGE S. HICKS, JR.

JENNIE GAWRON *vs.* SAME.

JOSEPHINE PAJAK *vs.* SAME.

Hampshire.   September 22, 1937. — March 1, 1938.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Practice, Civil,* Auditor: trial on report only, findings; Findings by judge. *Negligence,* Gross, Motor vehicle, In use of way.

In an action heard by a judge of the Superior Court only upon the report of an auditor whose findings were not to be final, a conclusion of fact by the judge must stand if warranted by the auditor's subsidiary findings although such conclusion is contrary to one, also so warranted, ·reached by the auditor.

Findings merely that the operator of an automobile, while at night going down hill on a slippery road at the rate of forty-five miles an hour, turned his car sharply into an intersecting road without slowing down, but with no inattention to his driving, and that on the second road his car skidded and crashed into a tree, warranted a conclusion that he was not grossly negligent.

THREE ACTIONS OF TORT.   Writs in the Superior Court dated respectively, April 11, 1934, April 10, 1934, and April 10, 1934.

The cases were heard without jury by *Broadhurst,* J., and in this court were submitted on briefs.

*E. L. O'Brien & J. L. Lyman,* for the plaintiffs.

*J. D. Ross & R. J. Dunn,* for the defendant.

FIELD, J.   These three actions of tort were brought to recover compensation for personal injuries sustained by the plaintiffs when they were riding as guests in an automobile operated by the defendant.   The cases were tried together before an auditor whose findings of fact were not final.

In each case the auditor filed a report, and the plaintiff and the defendant each made a motion for judgment upon the report. Rule 88 of the Superior Court (1932). The judge in each case denied the plaintiff's motion, allowed the defendant's motion, and ordered judgment for the defendant. The cases come before us on the plaintiffs' exceptions.

The auditor's reports were identical except as to the description of the plaintiffs' injuries and the amounts of damages found.

There was no error in the orders of the trial judge in each case unless the auditor's report required, as matter of law, a finding that the defendant operated the automobile in a grossly negligent manner. Such a finding was not required.

The auditor found that each plaintiff "in the exercise of due care received bodily injuries . . . as a result of the gross negligence, carelessness and unskilfulness of the defendant in the operation of his . . . [automobile]." Since there was no evidence before the trial judge other than the auditor's report, this general finding required a finding for the plaintiff unless the subsidiary findings of the auditor were necessarily inconsistent with this general finding or warranted the inference, contrary to the general finding, that the defendant was not grossly negligent. *Ballou* v. *Fitzpatrick*, 283 Mass. 336, 338. *Brooks* v. *Davis*, 294 Mass. 236, 238, 246. *Savin* v. *Block*, 297 Mass. 487, 490, and cases cited.

The subsidiary findings warranted the inference that the defendant was not grossly negligent. The subsidiary findings may be summarized as follows: The defendant, operating his automobile with the plaintiffs as passengers, shortly after midnight of September 4, 1933, was travelling easterly on Mountain Park Road toward Holyoke, intending to turn north on Smiths' Ferry Road at the intersection of these roads. Each road had a macadam surface eighteen feet wide. At the junction of the roads Smiths' Ferry Road "spreads out in a fan shape . . . with a triangular green in the center, bordering Mountain Park Road, twenty-four . . . feet long, and three or four . . . inches high, the westerly and easterly ends extending out so that they

are almost level with the road. The westerly and easterly ends of the green overlap the westerly and easterly side lines extended of the Smiths' Ferry Road at points on either side." Smiths' Ferry Road at each side of the green is eighteen feet wide. "These roads are heavily wooded on each side from a point ten . . . feet from the road except, near the intersection and west of the green . . . . Here there is a clearance of over fifty . . . feet from the road and this clearance extends up the Mountain Park Road on its northerly side for one hundred . . . feet."

The defendant, before reaching the junction of the roads, was driving down a "steep grade, of about five hundred . . . feet from the top of the grade to a point opposite the point of accident" at a speed of forty-five miles an hour. The road was wet and slippery. There were no road lights. The headlights of the defendant's automobile were lighted and in working order. There were no other automobiles or other traffic on the road. There was no conversation between the defendant and the plaintiffs. The defendant failed to see Smiths' Ferry Road "on the left as he came down the grade," but "made a quick, sharp turn cutting across the easterly end of the grass triangle with his two left wheels and entered the easterly intersection of the Smiths' Ferry Road." The automobile, after travelling sixty feet, "just avoided hitting a telephone pole standing five . . . feet in from the easterly side of the Smiths' Ferry Road," struck a tree about thirty feet beyond, "standing eighteen . . . inches in" from the easterly side of the macadam, and "stopped about a foot back and one foot to one side" of another tree. The shoulder of the road in which the telephone pole and these trees stood was about six feet wide, of "trap rock with grass growing through it and not as firm as the road way."

The "defendant did not apply his brakes or make any effort to slacken his speed or stop his automobile from the time he turned on Mountain Park Road until he" struck the tree, though he "had time to apply his brakes from the time he turned on Mountain Park Road to the time he struck" the tree. After he turned, his lights were in direct

line of the tree. The automobile skidded just before it struck the tree. And "the skidding was in part due to the speed at which the defendant was driving." The automobile struck the tree "at or near the forward door and on the right hand side." The "right front fender about six . . . inches up from the running board, the right running board, the rear fender, the rear end, the starter and the windshield were broken." The defendant — according to his own testimony as recited in the auditor's report — "when he went on the soft shoulder . . . didn't think it was necessary to apply his brakes" but "he took a chance to avoid the tree by not applying the brakes."

Whether there is gross negligence in the operation of an automobile depends upon all the circumstances of the case. While gross negligence may be found though no single element of the operator's conduct is sufficient to warrant such a finding, the particular elements of his conduct are proper matters for consideration in determining whether his conduct as a whole was grossly negligent. In these cases the conclusion was warranted that the defendant's attention was not at any time diverted from the operation of the automobile, and that he did not act in defiance of warnings from his passengers. Compare *Crowley* v. *Fisher,* 284 Mass. 205; *MacEachern* v. *Stieler,* 289 Mass. 346. Nothing by way of act or omission on the part of the defendant, considered by itself, even if negligent, warranted a finding of gross negligence on his part prior to the time when he turned into Smiths' Ferry Road. Compare *Adamian* v. *Messerlian,* 292 Mass. 275; *Kohutynski* v. *Kohutynski,* 296 Mass. 74, 76–77. And inferences were warranted that, after he discovered that he had gone so far that he could not turn into Smiths' Ferry Road at the usual place, he could not have slackened speed materially before turning except by applying the brakes, and that on the wet and slippery road application of the brakes, even if he had time to apply them, would have been unsafe. Similar inferences could have been drawn with respect to the time after he had so turned. See *Arnold* v. *Brereton,* 261 Mass. 238, 241–242; *Hiller* v. *Desautels,* 269 Mass. 437, 440–441. The crucial question is

whether, in view of the speed of the automobile, the condition of Mountain Park Road, the necessity of crossing the "grass triangle" in order to turn into Smiths' Ferry Road and the uncertainty as to conditions on that road after the turn was made, the defendant was grossly negligent in turning into Smiths' Ferry Road with the result which followed. Clearly the inference was warranted that this result, if not foreseeable in its precise form, was, in its general nature, a probable consequence of the defendant's action. See *Perlman* v. *Burrows*, 270 Mass. 182, 184; *Randall* v. *Boston, Revere Beach & Lynn Railroad*, 289 Mass. 241, 244; *Goyette* v. *Amor*, 294 Mass. 355, 357; *Engel* v. *Boston Ice Co.* 295 Mass. 428, 435. But on the other hand, the inference could have been drawn that this result was not so highly probable that the defendant's disregard of the risk of turning into Smiths' Ferry Road amounted to such "indifference to present legal duty," such "utter forgetfulness of legal obligations so far as other persons may be affected," as constitutes gross negligence. See *Altman* v. *Aronson*, 231 Mass. 588, 591. And the inference could have been drawn that the defendant's conduct after making the turn into Smiths' Ferry Road, though not to any extent excusing prior fault (see *McBride* v. *Middlesex & Boston Street Railway*, 276 Mass. 29, 33), was not in itself grossly negligent.

We need not decide whether the subsidiary facts found warranted a finding that the defendant's conduct, considered as a whole, was grossly negligent. The subsidiary facts found were susceptible of different inferences. It was the duty of the trial judge, as trier of fact, to determine what inferences should be drawn. We cannot say, as matter of law, that a conclusion — contrary to the general finding of the auditor — that the defendant was not grossly negligent was not warranted by the subsidiary facts found and permissible inferences therefrom. Most cases relating to gross negligence which have come before this court are distinguishable on the ground that in those cases, unlike the present case, the question presented was whether the evidence warranted — not whether it required — a finding of gross negligence. See, however, *Kohutynski* v. *Kohutyn-*

*ski*, 296 Mass. 74, 79; *Savin* v. *Block*, 297 Mass. 487. And, even apart from this distinction, in no case was the evidence closely similar to the evidence here. But see *McKenna* v. *Smith*, 275 Mass. 149; *Richards* v. *Donohue*, 285 Mass. 19; *Lefebvre* v. *Howell*, 288 Mass. 253. Cases relied on by the plaintiffs (*Manning* v. *Simpson*, 261 Mass. 494, *McCarron* v. *Bolduc*, 270 Mass. 39, *Dzura* v. *Phillips*, 275 Mass. 283, *Schusterman* v. *Rosen*, 280 Mass. 582, *Caldbeck* v. *Flint*, 281 Mass. 360, *Connors* v. *Boland*, 282 Mass. 518, *Curtis* v. *Comerford*, 283 Mass. 589) are distinguishable. See also *Savin* v. *Block*, 297 Mass. 487.

*Exceptions overruled.*